J. Albert & Sons, Inc. v. Commissioner.
J. Albert & Sons v. Commissioner
Docket No. 25024.
United States Tax Court
1951 Tax Ct. Memo LEXIS 339; 10 T.C.M. (CCH) 86; T.C.M. (RIA) 51025; January 26, 1951
*339 Nathan Wald, Esq., 1170 Broadway, New York, N. Y., for the petitioner. Thomas R. Charshee, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined an income tax deficiency of $894.42 and an excess profits tax deficiency of $2,553.17 against the petitioner for the fiscal year ended January 31, 1946. The issue is whether the respondent properly disallowed as excessive $6,600 paid as officers' salaries by the petitioner for the taxable year. Findings of Fact The petitioner was a corporation organized under the laws of the State of New York, on January 23, 1945, with its principal office in New York City. It filed its amended corporation income and declared value excessprofits tax return for the year ended January 31, 1946, with the Collector of Internal Revenue for the Second District of New York. On February 1, 1945, the petitioner succeeded to the business of a partnership owned and operated by Joseph Albert, his wife, Fannie, and their three sons, Philip, Arnold and Martin. The business was that of manufacturing cheap cardboard boxes and their sale, chiefly to hat manufacturers in the metropolitan area *340 of New York City. The business had been established some 50 years earlier, by Joseph Albert's father. The petitioner acquired the business in exchange for 162 1/2 shares of its capital stock, 25 shares being issued to Joseph Albert, 25 shares to Fannie Albert, 50 shares to Philip Albert, 50 shares to Arnold Albert, and 12 1/2 shares to Martin Albert. Arnold Albert became president of the petitioner, Philip Albert, vice president, and Joseph Albert, secretary-treasurer. Of the stockholders and officers of the petitioner, only Joseph and Philip Albert were active in the management and operation of its business. Their salaries were fixed at $100 per week, beginning February 1, 1945. They had received the same compensation from the partnership. The manufacturing operation consisted of the conversion of raw pasteboard into set up boxes. On completion of the boxes, the purchaser.s labels were pasted thereon and the boxes were packaged for delivery. Each morning the boxes were loaded on rented trucks, driven by the petitioner's employees, and delivered to some 70-odd customers in the metropolitan area. The boxes sold for 5 to 10 cents each, and the individual sales ranged from about *341 $5 to $40. The work day of Joseph and Philip Albert began at about 7 o'clock each morning. The employees, who numbered from 23 to 28 people, worked from 8:15 A.M. to 5:15 P.M., except for the bookkeeper, whose hours were from 9:00 A.M. to 5:00 P.M. About four nights each week, Joseph and Philip Albert worked after regular closing time. Some years earlier, the buying of the raw material, including pasteboard, wrapping twine and paper, used in the manufacturing process, was done by Herman Albert, another of Joseph Albert's sons, for which he drew a salary of $100 per week. The selling of the finished products had been handled by two salesmen, on a commission basis of between 6 to 8 per cent. In 1942 these commissions approximated $7,000. The salesmen and Herman Albert left the business at the end of 1942, or early in 1943. Attempts to replace these employees were unsuccessful and their duties were assumed and thereafter performed by Joseph and Philip Albert. They continued to perform all of these functions after the petitioner was organized. In addition to these duties and their normal administrative duties, they also busied themselves with the actual mechanics of everyday operations; *342 they labeled, tied and loaded the boxes for shipping. Their night work was largely that of labeling, packing and tying the boxes for delivery the next day. In the performance of these various duties for the petitioner, Joseph and Philip Albert devoted approximately 50 to 60 hours a week. On September 30, 1945, the petitioner sold its plant and equipment to the Variety Paper Box Corporation, hereinafter referred to as Variety, pursuant to an agreement dated September 12, 1945. Negotiations leading to the sale were handled by Joseph and Philip Albert. Pursuant to this agreement, the petitioner's machinery and office equipment were sold for $13,800, and good will, consisting of a list of 77 customers, for $200. The agreement also provided, inter alia, that Philip was to continue in the employ of the purchaser, Variety, for the period of October 1 through December 31, 1945, in the same capacity as employed by the petitioner. For these services, he was to be paid $100 per week. Joseph was employed by Variety for the same period, but only "to render such service as he in his discretion shall see reasonably fit and proper." His compensation was to be 25 per cent of the net profits earned *343 by the business during the threemonth employment period. Joseph's share of the net profits and Philip's salary received from Variety, pursuant to the agreement, amounted to $650 and $1,300, respectively. Variety also employed two officers at respective weekly salaries of about $125 and $150. During this period, and continuing throughout the petitioner's taxable year ending January 31, 1946, both Alberts continued to draw salaries of $100 per week from the petitioner. Although they were employed by Variety in the capacities noted above for three of the last four months of petitioner's taxable year, they devoted a portion of their time, beginning about October 1, 1945, to the petitioner's interest. They attended to the various details of liquidating the petitioner's business and collected or attended to the settlement of about 100 accounts receivable owing to the petitioner. In addition, they investigated in the petitioner's behalf possible new location sites for setting up another business in New Jersey. On December 27, 1945, the petitioner's board of directors met, and the single item of business transacted was the execution of a resolution authorizing payment of the sum of $1,500 *344 each to Joseph and Philip Albert, for additional services rendered by them, which sums were paid within the taxable year. These services were described in the minutes of the meeting as those rendered by the Alberts for the period February 1 to September 30, 1945, during which time the petitioner was understaffed because of the difficulty of obtaining competent help. The petitioner's negotiations for the location and construction of a new plant in New Jersey failed to materialize. On November 25, 1947, the petitioner was dissolved. On its amended corporation income and declared value excess-profits tax return for the fiscal year ended January 31, 1946, the petitioner reported gross sales of goods included in inventories of $90,800.88 and a net income of $2,305.75, of which sum $11,816.66 represented capital gain on the sale of its business to Variety. Among deductions claimed, was compensation paid to officers totaling $13,900, $6,700 each to Philip and Joseph Albert, and $500 to Martin Albert, who was employed for a month prior to the sale of the business. Other wages and salaries totaling $26,330.78 were also listed. The respondent, in his determination of the petitioner's tax *345 liability, allowed all the wage deductions with the exception of that portion attributable to salary payments to Joseph and Philip Albert beginning October 1 and continuing through the end of the fiscal year and the $1,500 voted each by the resolution of December 27, 1945. These expenditures were disallowed as deductions, on the basis that they represented excessive compensation payments. They are listed as follows: Paid to
Date Paid
Description
Joseph Albert
Philip Albert
October, 1945
Compensation
$ 500.00
$ 500.00
November
Compensation
400.00
400.00
December
Compensation
400.00
400.00
December
Additional Compensation
1,500.00
1,500.00
January, 1946
Compensation
500.00
500.00
Totals
$3,300.00
$3,300.00
Opinion The issue is whether the respondent erred in rejecting as excessive the $6,600 total compensation payments made to Joseph and Philip Albert after the petitioner sold its business on September 30, 1945. Two phases of this question are presented under the facts: first, whether the Alberts' services to the petitioner from October 1, 1945, through January 31, 1946, were such as to warrant any compensation payment, and, *346 if so, how much; and second, whether the $1,500 payment to each, for services rendered during the first eight months of the fiscal year ending January 31, 1946, was reasonable as to all, or part, of the amount paid. The question is one of fact. As to the reasonableness of the contested weekly salary payments, it appears that Joseph and Philip Albert did render services of some value to the petitioner during the remaining four months of the taxable year following the September 30th sale. Specifically, they attended to the settlement of some 100 accounts receivable owing to the petitioner and also rendered some service by investigating possible new location sites in New Jersey. However, in view of Philip's full-time duties to Variety during this period, and of Joseph's similar part-time responsibility, it also appears that neither devoted services to the petitioner after the sale commensurate with their activity prior thereto; and on the record made herein, it is only in relation to their pre-sale services that we can properly judge the value of their activity thereafter. This measuring device is necessary, as the petitioner has established no other means for resolving the issue. *347 In view of the above facts, we conclude that the personal services actually rendered by the Alberts to the petitioner during this four-month post-sale period warrant the allowance of a proportionate part of these contested weekly salary payments as a deductible expense. Having no better basis for determining what this proportion is than can be divined from these facts, and recognizing that speculation is required, because of petitioner's inexactitude in the establishment of a more accurate criterion, we are of the opinion that 25 per cent of the weekly payments to the Alberts during this fourmonth period of dual activity represents a reasonable compensation allowance for services rendered. See . We are next concerned with the deductibility of the $1,500 additional compensation paid to each Joseph and Philip Albert, pursuant to the December 27, 1945, resolution of the petitioner's board of directors. The basis for the added payments, as shown by the minutes, was as follows: "Mr. Joseph Albert reported that for the period from February 1 to September 30, 1945 the Company was understaffed, owing to the fact that it was difficult to *348 obtain competent help. As a result, thereof, the two active officers, Joseph Albert and Philip Albert, had to take on additional duties, and had to work very long hours." The additional amounts paid to Joseph and Philip Albert pursuant to this resolution had the effect of increasing their individual salaries from $100 weekly to about $144.12, over that 34-week period. The question is whether these added duties merited the additional compensation. The respondent, in his brief, recognizes that a resolution of the board of directors, such as the one authorizing the payment of the additional compensation contested herein, creates an inference that the salary allowances were reasonable, but argues that it is not conclusive and does not by itself establish the reasonableness of the payment. He concludes that no satisfactory corroborative evidence was submitted to substantiate the inference, or to support a finding that the additional compensation was reasonable, and that it is, therefore, rebutted. We agree with the respondent that the resolution did give rise to an inference of reasonablness, but are of the opinion that he erred in his interpretation of the corroborative facts. The *349 petitioner was actively engaged in the manufacture and sale of cardboard boxes for only two-thirds of the taxable year ended January 31, 1946, the sale of the business to Variety being effected at the end of eight months. Yet the reported gross sales for this period were $90,800.88. Remembering that these boxes were cheap, and that individual customer sales ranged from about $5 to $40, it is apparent that this total volume of sales represented considerable managerial work in the purchase of raw materials, administration of plant and employees and sales of that volume of the completed product. These phases of the petitioner's operation were handled by Joseph and Philip alone, and, with the exception of their administrative duties, represented additional responsibilities, first assumed by them in early 1943, due to the petitioner's inability to fill vacancies resulting when two salesmen and a purchasing employee left its service. Illustrative of the value of their services is the fact that the two salesmen had earned about $7,000 in commissions in 1942, while the purchasing employee had been paid a salary of $100 per week. Philip and Joseph devoted a total of about 50 to 60 hours each *350 per week to the petitioner's business. Joseph was a pioneer in the box industry, having been so occupied for about 30 or 40 years. Philip, also experienced in its operation, had served as vice president in the business as early as 1936. Variety, which purchased the business from petitioner, employed two salaried officers at respective weekly salaries of about $125 and $150. As noted previously, if the contested $1,500 additional compensation paid to each Albert was allocated to the eight-month period in which additional services were rendered, their weekly salary would then be about $144 each. Their salary thus computed, we think, compares favorably with the salaries paid to Variety's officers. At the time of the corporate resolution authorizing the additional compensation, Joseph owned 25 and Philip 50 of the petitioner's 162 1/2 outstanding shares. Although there was a close personal relationship between all stockholders, and even though the resolution was adopted after the sale of the business, as the respondent notes, we conclude that Joseph and Philip Albert's experience, long and successful service, and attention to numerous additional duties in the petitioner's behalf are, *351 under these facts, a reasonable basis for and deserving of the additional compensation. Decision will be entered under Rule 50.